**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DURON COCKRELL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) No. 4:17 CV 1786 DDN |
| | ) |
| DEAN MINOR, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM

This action is before the court upon the petition of Missouri state prisoner Duron Cockrell for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), as well as petitioner's motion for appointment of counsel, notice of fraud upon the Court, and motion for an evidentiary hearing. (Docs. 33 and 34).

The parties have consented to the exercise of plenary authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## BACKGROUND

Petitioner Cockrell was charged as a prior offender in the Circuit Court of the City of St. Louis with two counts of first-degree statutory sodomy, attempted first-degree statutory rape or in the alternative first-degree child molestation, and endangering the welfare of a child in the first degree. (Doc. 23, Ex. 2 at 16-17). Following a jury trial in February 2012, petitioner was convicted of attempted statutory rape in the first degree and one count of statutory sodomy in the first degree. (Doc. 23, Ex. 1 at 590). The court granted petitioner's motion for judgment of acquittal as to the count of endangering the welfare of a child in the first degree, and the jury acquitted petitioner on the remaining

count of statutory sodomy in the first degree. (Doc. 23, Ex. 2 at 10). On April 13, 2012, the court sentenced him to ten years on the attempted statutory rape count and eighteen years on the statutory sodomy count, to run concurrently. (Doc. 23, Ex. 1 at 605).

Petitioner timely filed a direct appeal. (Doc. 23, Ex. 2 at 15). In his sole point on appeal, he argued that the trial court erred in preventing him from presenting evidence about the victim's alleged motive to fabricate a story against him. (Doc. 23, Exs. 4-6). Specifically, he claimed that the victim, who is the daughter of his former paramour, wanted to get out of her mother's house and move in with her father, because the victim's mother allegedly had a sexual relationship with another woman. Petitioner claimed that this gave the victim motive to fabricate a story against him: so that she could get out of her mother's house. *Id.*

In June 2013, the Missouri Court of Appeals, Eastern District, affirmed his conviction and sentence. (Doc. 23, Exs. 5-6). Petitioner then filed a motion for post-conviction relief in November 2013. (Doc. 23, Ex. 7). He argued that his appellate counsel was ineffective in failing to include seven claims in his motion for a new trial. (*Id.*). He also claimed his trial counsel was ineffective for failing to object to a jury instruction (*id.* at 13) and in failing to limit, object to, or request a mistrial based on "bad acts" evidence the trial court admitted regarding his physical abuse of the victim's mother. (*Id.* at 24). The circuit court denied the motion in October 2014 without evidentiary hearing. (Doc. 23, Ex. 7). Petitioner appealed, but the Court of Appeals affirmed on October 6, 2015, holding the circuit court did not clearly err in denying post-conviction relief. (Doc. 23, Ex. 10).

On May 26, 2016, petitioner filed a petition for a writ of habeas corpus in the Circuit Court of Randolph County, Missouri. *Duron Cockrell v. Dean Minor*, 16RA-CV00630 (May 26, 2016). In March 2017, following a hearing at which petitioner was not present, the writ was summarily denied. *Id.* (*See also* Doc. 1 at 168). Petitioner filed a new habeas corpus petition in the Missouri Court of Appeals, Western District. The

Court of Appeals summarily denied the writ on June 5, 2017. *In Re Duron Cockrell v. Dean Minor*, WD80768 (June 5, 2017) (*see also* Doc. 1 at 167).

On June 21, 2017, petitioner filed the instant federal petition for habeas corpus relief in this Court under 28 U.S.C. § 2254. (Doc.1, Ex. 1).

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges ten grounds for habeas relief, in each arguing that his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution were violated:

(1)  The trial court erred by preventing petitioner from presenting evidence about the victim's motive.

(2)  Petitioner's trial counsel rendered constitutionally ineffective assistance of counsel for failing to object to evidence about petitioner's alleged bad acts.

(3)  The State failed to prove each element of statutory sodomy in the first degree.

(4)  The prosecutor misled the jury to believe incorrect elements of the crime of sexual deviant intercourse.

(5)  The Missouri courts denied petitioner due process of law by either holding a hearing without petitioner present or by not holding an evidentiary hearing.

(6)  Petitioner is actually innocent, because the State failed to prove each element of first-degree statutory sodomy and attempted statutory rape and shifted the burden to the defense to prove innocence.

(7)  Petitioner's trial counsel was ineffective for failing to provide expert witnesses or to investigate childhood sexual trauma, DNA analysis, proper police procedure, and the collection of technological evidence.

(8)  The trial court erred by allowing the prosecution to strike for cause any venireperson who would question the Court's instructions and

the validity of the law as applied in the case, including the Missouri rules of evidence, which denied the jury's right to nullification.

(9)     "Prosecutorial misconduct, jury stacking, Jenks/Brady material withholding, Giglio/Brady perjury, misrepresenting the forensic evidence of DNA, Amylase, and seminal fluid lab results."

(10)    The trial judge was biased because he made snide remarks to defense counsel concerning the central defense that the allegations were a fabrication, and wrote a book exposing "his personal worldview of the altright."

(Doc. 1 at 4-28).

Respondent contends that these grounds lack merit.  (Doc. 18).


## III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254.  *See* 28 U.S.C. § 2254(b)(1)(A).  A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

It is not sufficient exhaustion of state remedies for a petitioner simply to have no remaining procedure for bringing a claim to the state court.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  Rather, a petitioner must have fairly presented the substance of each federal ground to the state trial and appellate courts.  *Id*.  To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or during post-conviction proceedings.  *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1996).  "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default".  *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)).

A petitioner may overcome the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To establish cause for a procedural default, petitioner must "show that some objective factor external to the defense impeded" his "efforts to comply with the State's procedural rule." *Id.* at 753. To establish actual prejudice, petitioner "must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted).

Petitioner's direct appeal from his conviction raised federal habeas Ground 1. (Doc. 23, Exs. 4-6). Ground 2 was raised in his post-conviction motion in the circuit court and the denial of that ground was appealed to the Missouri appellate court. (Ex. 7 at 24, Ex. 8 at 19).

Finally, petitioner raised Grounds 3 to 10 in his petitions for habeas corpus relief in both the Missouri circuit court and the Missouri Court of Appeals. (Doc. 1 at 169-236). However, these state court habeas corpus proceedings do not qualify as adequately presenting these grounds to the state courts for compliance with § 2254. *See Byrd v. Delo*, 942 F.2d 1226, 1231-32 (8th Cir. 1991) (en banc); *cf. Jolly v. Gammon*, 28 F.3d 51, 53-54 (8th Cir. 1994) (regarding motion to recall mandate).

When a state court decides a federal claim on state procedural grounds, rather than on the merits, federal habeas review is barred and the claim is not exhausted, because this state court decision rests on independent and adequate state procedural grounds. *Coleman v. Thompson,* 501 U.S. 722, 730 (1991). Under Missouri law, state habeas petitions are not available to litigate issues that could have been asserted earlier, either on direct appeal or in a state post-conviction proceeding filed in a trial court. *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 516 (Mo. 2010) ("if a petitioner fails to raise a claim for relief that could have been asserted in an appeal or in a post-conviction motion, the petitioner normally is barred from raising the claim in a subsequent petition for writ

of habeas corpus"). Both of petitioner's habeas corpus petitions brought pursuant to Missouri Supreme Court Rule 91 were summarily denied by the state courts, and there is no indication federal issues were considered by the state court in denying the petitions. (Doc. 1, Ex. 1 at 167-68). The Missouri Court of Appeals decision stated in its entirety: "The Petitioner's Petition for writ of habeas corpus, submitted on May 19, 2017, is taken up and considered. The Court being fully informed does hereby deny Relator's Petition." (Doc. 1, Ex. 1 at 167). Consistent with other federal courts, this Court will assume the summary denials were based on state procedural law. *See Byrd v. Delo,* 942 F.2d at 1231-32 ("the ground of rejection was not an examination of the merits of the petition, which surely would have taken more time, but rather the application of a procedural rule believed by the Missouri Supreme Court to be plain and obvious"); *see also Schneider v. Delo*, 890 F. Supp. 791, 802 (E.D. Mo. 1995), *aff'd*, 85 F.3d 335 (8th Cir. 1996).

Thus, petitioner has not overcome the procedural bar for Grounds 3 to 10. For federal court review to occur, petitioner must show good cause and actual prejudice under *Murray v. Carrier*, 477 U.S. 478 (1986). He has failed to do so. First, while he raised many grounds in his state court petition for habeas corpus, he did not raise them on direct appeal or in post-conviction motions, which barred subsequent merits review by Missouri courts. Petitioner has not shown legally sufficient cause for this default. Absent a showing of cause, this Court need not reach the issue of prejudice. *Zeitvogel v. Delo*, 84 F.3d 276, 279 (8th Cir. 1996).

Second, petitioner has also failed to show that this Court's failure to consider the defaulted grounds would result in a miscarriage of justice. Such a miscarriage of justice would exist if petitioner presented new evidence of actual innocence showing "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013). While petitioner claims he is actually innocent he has not presented evidence of actual innocence or demonstrated that a jury would have been unreasonable in finding him guilty. Accordingly, petitioner's Grounds 3 to 10 are procedurally barred.

Nevertheless, if this court concludes that the procedurally barred grounds are without merit, Congress has authorized it to consider them and to dismiss them. 28 U.S.C. § 2254(b)(2). The undersigned has considered all of petitioner's federal grounds and concludes that they are without merit.

## III. TIMELINESS

Congress also provides a one-year window, calculated from the conclusion of direct state review, in which a habeas applicant may file a petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). The trial court sentenced petitioner on April 13, 2012. Petitioner timely filed a notice of appeal on April 23, 2012, and the Missouri Court of Appeals denied the appeal on June 4, 2013. (Doc. 23, Ex. 2 at 15; Ex. 6 at 1). Petitioner applied for transfer to the Missouri Supreme Court, which was denied, and the Court of Appeals issued its mandate on October 4, 2013. Accordingly, on October 5, 2013, the one-year time limit began to run.

On November 19, 2013, or 45 days later, petitioner filed a motion for post-conviction relief. (Doc. 23, Ex. 7 at 2). A state post-conviction relief proceeding or other state collateral review tolls the one-year limitations period. 28 U.S.C. § 2244(d). On October 15, 2014, the circuit court denied petitioner's motion, a decision petitioner appealed, and the Court of Appeals affirmed the denial, issuing its mandate on October 30, 2015. (Doc. 23, Ex. 10). On October 31, 2015, the one-year clock resumed, with 320 days remaining in the federal limitations period. *See Streu v. Dormire*, 557 F.3d 960, 968 (8th Cir. 2009).

On May 26, 2016, or 208 days later, petitioner filed for a writ of habeas corpus in state court, again tolling the one-year clock. 29 U.S.C. § 2244(d)(2).[1] The trial court

---

[1] While federal claims brought in Missouri state court habeas petitions generally do not satisfy the exhaustion requirement, *see Byrd v. Delo,* 942 F.2d 1226, 1231-32 (8th Cir.

denied petitioner's motion for writ on March 21, 2017. He appealed, and on June 5, 2017, his appeal was denied, with no mandate issued. Under Missouri Supreme Court Rules 30.25, 83, and 84.17, the time limit for filing post-disposition motions expires fifteen days after the appellate court files its opinion, or in this case, on June 20, 2017. The very next day, on June 21, 2017, petitioner timely filed in this Court this petition for a writ of habeas corpus. (Doc. 1).

## IV. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief can only be granted by a federal court on a claim that has been decided on the merits by a state court when that adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

In order for a state court decision to be "contrary to" Supreme Court precedent, it must arrive at an opposite result than the Supreme Court when confronting facts that are materially indistinguishable from a relevant Supreme Court precedent. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). When analyzing claims under 28 U.S.C. § 2254(d)(2), "a determination of a factual issue made by a State Court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). In order to rebut this presumption, a petitioner must present clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

---

1991), state habeas proceedings will nevertheless operate to toll the statute of limitations. *See Polson v. Bowersox*, 595 F.3d 873, 875 (8th Cir. 2010).

Petitioner's claims in Grounds 3-10 were not adjudicated on the merits by a state court, and thus, the pre-AEDPA standard for habeas review governs. *Gingras v. Weber*, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. § 2254(d).") (internal citations and quotations omitted); *Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010). Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial, or that the verdict likely would have been different absent the now-challenged [defect]." *Robinson v. Crist*, 278 F.3d 862, 865-66 (8th Cir. 2002).

## EVIDENTIARY HEARING

Petitioner has moved this Court for an evidentiary hearing. (Doc. 33). AEDPA permits evidentiary hearings on federal habeas review, but with significant restrictions. If an applicant has failed to develop the factual basis of a claim in state court proceedings, no evidentiary hearing is permitted, unless the applicant shows that:

    (A) the claim relies on

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. 2254(e)(2). The burden is on the petitioner to allege sufficient facts to support the grant of an evidentiary hearing. That is, whether petitioner's allegations, if true, would establish his right to relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

In support of his motion for a hearing, petitioner alleges that the jury that convicted him in Missouri state court was improperly instructed.  Specifically, he claims that at his trial, the jury was instructed as to Count 3 charge of "child molestation in the first degree" in violation of Mo. Rev. Stat. § 566.067, while the indictment and sentencing both referred to Count 3 as "attempted statutory rape in the first degree" in violation of Mo. Rev. Stat. § 566.032. (Doc. 33).  He also claims that the Missouri trial court did not instruct the jury as to Count Five of the indictment that charged him with "statutory sodomy in the first degree" in violation of Mo. Rev. Stat. § 566.062. (*Id.*).  He claims, therefore, that he was sentenced for offenses that the jury did not find he committed. (*Id.*).  Petitioner further alleges that respondent fraudulently omitted the portions of the transcript revealing the improper instructions in its document production to petitioner on or about May 24, 2018. (Doc. 33).

Plaintiff failed to develop in state court the factual basis of these claims and raised them for the first time in the instant motion for evidentiary hearing filed in October 2018. (Doc. 33).  The factual predicate for these claims could have been previously discovered through the exercise of due diligence, and they do not rely on any new rule of constitutional law.

Additionally, petitioner has not alleged any facts that would be sufficient to establish constitutional error.  Upon its review of the record, the Court notes that the trial court renumbered the counts after it granted defendant's motion for judgment of acquittal on the child endangerment charge in Count VI, "for purposes of symmetry and to avoid confusing the jury." (Doc. 23, Ex. 1 at 555-56).  Accordingly, Counts 1-5 became Counts 1-4. (*Id.*).  The Court issued instructions for these re-numbered counts, including the ones for which he was convicted, based on the Missouri Approved Instructions (Criminal). (Doc. 23, Ex. 1 at 556-67, 560; Ex. 2 at 24-36).

The Court also notes that respondent has filed with the Court all of the pages to which petitioner refers, including a copy of each of the jury instructions, and there is no evidence of any omitted pages. (Doc. 23, Ex. 2 at 24-36).  The Court has reviewed each

of petitioner's grounds for habeas relief, and none alleges facts upon which relief could be granted.  Petitioner's motion for an evidentiary hearing is denied.

## V. DISCUSSION

### A.     Ground 1

In Ground 1, petitioner argues that the trial court abused its discretion in preventing him from presenting evidence about the victim's motive, which violated his federal constitutional rights.  The admission of evidence at a state court trial is a matter of state law and will not form a basis for federal habeas relief, unless the state court's "evidentiary ruling infringes upon specific constitutional protection or is so prejudicial that it amounts to denial of due process." *Abdi v. Hatch,* 450 F.3d 334, 338 (8th Cir. 2006).  The Missouri Court of Appeals, in considering petitioner's case on direct appeal, determined that this evidence was related to a collateral, irrelevant issue:

> Here, on redirect examination of Victim's mother, defense counsel asked if she had a relationship at some point with another woman. The prosecution objected that this was beyond the scope of cross-examination. Defense counsel asked for "a little leeway." The prosecutor again asserted that it was beyond the scope of cross-examination and completely irrelevant. Counsel then approached the bench.

> Outside the presence and hearing of the jury, defense counsel stated that he was "not sure what the time frame [of the relationship] was exactly." Defense counsel then stated that the father would testify that Victim "told the social worker that this was part of the reasons why they were having problems." Defense counsel stated that this was the reason Victim was upset with her mother and that was "why she wanted to get out of the house."

> The prosecutor then clarified what defense counsel was trying to say:

> [V]ictim was angry with her mom. During the time that she was not with [Defendant], she was with another woman, and [Victim] had called her a dyke and other names and they were

having fights about it, that Dad was questioned at the hospital about why Mom and victim were having problems and he said something about another relationship, like with a woman, and that's what he's getting at right now.

The trial court responded as follows: "I let that other stuff in because we'd gotten part of it, but we're not going to go into yet another collateral issue regarding this relationship this witness had unless it had some direct bearing on the relationship with the defendant so I'll sustain the objection."

Defense counsel then recalled Victim's father to testify. Counsel again approached the bench and the prosecutor asked for a motion in limine to bar any questions about Victim's mother having any kind of sexual relationship with another woman. Defense counsel reiterated that it was relevant to Defendant because it went "to the resentment of the mother." The trial court responded that it had nothing to do with Defendant and noted that, by his own testimony, Defendant admitted he had a "hi/bye" relationship with Victim, and thus found no relevancy regarding the proposed testimony. The trial court sustained the motion.

In order to avoid a question-and-answer offer of proof, the trial court thereafter noted that Defendant wished to question Victim's father about a sexual relationship that the mother had that antagonized Victim. When an objection to proffered evidence is sustained, the proponent of the evidence must make an offer of proof in order to preserve the matter for appellate review. *State v. DeClue*, 128 S.W.3d 864, 872 (Mo. App. S.D. 2004). An offer of proof must show what evidence will be given if the witness is allowed to testify, the purpose and object of such testimony, and all facts necessary to establish its admissibility, including the relevance and materiality of the evidence. *Id.* Here, Defendant's offer of proof failed to prove that the evidence he wished to admit was relevant. It also failed to prove that it would have been admissible.

First, Defendant's offer of proof did not establish a time frame for when the alleged lesbian relationship took place; therefore, Defendant cannot show that the alleged lesbian relationship was relevant to show a motive for Victim to fabricate allegations against Defendant in order to get out of the house. Second, Defendant's offer of proof failed to establish that the evidence in question was admissible. Defendant made no offer as to what the mother would have testified to. Defendant's only offer was as to what Victim's father would have testified to. Defense counsel stated that the father would say that he told the social worker that this was one of the

reasons why Victim was upset with her mother and why she wanted to get out of the house. The prosecutor objected to the proposed testimony on hearsay grounds, and while defense counsel countered that it was not hearsay, defense counsel did not establish that father's knowledge was not based on other people's out-of-court statements. Defendant's offer of proof did not demonstrate that father's testimony would have been admissible; therefore, the trial court did not abuse its discretion in declining to allow Defendant to question Victim's mother and father about the mother's alleged lesbian relationship.

Moreover, even if the trial court's ruling was improper, Defendant was not prejudiced. The jury observed Victim's forensic interview in which she expressed her antagonism towards Defendant. In addition, the jury heard that Victim and her sister had made allegations of physical abuse against her father after they moved in with him. Their father testified that the girls had problems at his house and that the girls subsequently alleged that he had physically abused them. Thus, the jury heard that Victim and her sister had a pattern of making allegations against the adults with whom they lived. Defendant had the opportunity to thoroughly explore any bias Victim may have had against him. Under these circumstances, any potential probative value of the evidence of the alleged lesbian relationship Victim's mother had at an unspecified time was outweighed by the risk of confusion of issues and unfair prejudice. *State v. Sanders*, 353 S.W.3d 721, 722 (Mo. App. S.D. 2011) ("Legal relevance involves a balancing of probative value against risks of unfair prejudice, confusion of issues, misleading the jury, undue delay, etc. [and] trial courts have broad discretion to exclude marginally relevant evidence due to such concerns"). The trial court did not abuse its discretion in refusing to admit such evidence.

(Doc. 23, Ex. 6 at 5-8).

A federal habeas court will not reexamine state-court determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Instead, this Court's review is limited to deciding whether the state's evidentiary ruling rose to a constitutional violation. "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker v. Bowersox,* 94 F.3d 458, 460 (8th Cir. 1996). The state circuit court's evidentiary ruling was a reasonable application of Missouri law. *See State v. Sanders*, 353 S.W.3d

721, 722 (Mo. App. S.D. 2011). The denial of petitioner's offer of proof regarding the victim's alleged motive was not conspicuously prejudicial, nor did it fatally infect the trial, so it falls short of the level required to demonstrate a due process violation.

Ground 1 is without merit.


## B.     Ground 2

In Ground 2, petitioner argues that trial counsel was constitutionally ineffective for failing to object to evidence about petitioner's alleged bad acts. In *Strickland v. Washington*, the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. 466 U.S. 668 (1984). Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Petitioner must prove two elements to prevail on a claim of ineffective assistance of counsel. First, he must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance. *Id.* at 690. Counsel's strategic choices made after thorough investigation are virtually unchallengeable. *Strickland*, 466 U.S. at 690–91. Additionally, decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. *Id.*

Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. *Id.* at 687. "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

Applying the *Strickland* standard, the Missouri post-conviction motion court held:

> The amended motion's claim that defense counsel was ineffective in eliciting or permitting the State to elicit evidence of Cockrell's prior assaults on the victim's mother is insufficient as a matter of law to warrant relief. As found above, the defense at trial included efforts to show the

victim's bias against Cockrell and her desire to get him out of the home. To this end, defense counsel cross-examined the victim in part regarding her disapproval of Cockrell, including that Cockrell hit the Victim's mother. Tr. 294. Plainly, counsel used judgment in injecting the issue so as to bolster the theory that the victim was making false accusation for ulterior reasons. The evidence of abuse of the mother clearly cut both ways: it portrayed Cockrell as guilty of abusing his girlfriend, but it also advanced the argument that the victim had a motive to lie. Under such circumstances, the Court cannot second-guess counsel's strategy, which plainly was reasonable. (The Court notes that defense counsel's trial strategy was at least partially successful: the jury acquitted Cockrell on one count of statutory sodomy first degree.)

(Doc. 23, Ex. 7 at 41-42).

When petitioner appealed this decision, the Court of Appeals affirmed, explaining that:

In order to prevail on a claim of ineffective assistance of counsel, Movant must overcome the presumption that trial counsel's actions were a matter of trial strategy. *Barnett v. State*, 103 S.W.3d 765, 772 (Mo. banc 2003). Furthermore, Movant must show that trial counsel's failure to object did not conform to the degree of skill, care and diligence of a reasonably competent attorney and that as a result, Movant was prejudiced. *Id.* Here, Movant's defense theory was that Victim had a motive to fabricate the sexual abuse, i.e., Victim did not want Movant in the house. To that aim, trial counsel cross-examined Victim about the various reasons she did not like Movant and did not want him in her house. As a result, Defendant opened the door for the State to inquire further into why Victim did not like Defendant. *See State v. Crenshaw*, 59 S.W.3d 45, 50 (Mo. App. E.D. 2001) ("Once Defendant opened the door regarding whether Victim's grandmother disliked him, the [S]tate was free to cross the threshold and inquire further".)

Nonetheless, Movant argues that the evidence adduced by trial counsel was "too specific" and unnecessary because other evidence in the record explained why Victim did not like Movant. Given the fact that the defense theory was that Victim had a motive to fabricate the allegations, we cannot conclude that trial counsel's strategy was ineffective. While other evidence in the record support Movant's contention that Victim had reason to lie, it was reasonable for trial counsel to ask Victim about the alleged domestic violence to bolster the theory. Accordingly, Movant did not plead

facts warranting an evidentiary hearing, and the motion court did not clearly err in denying Movant's motion for post-conviction relief. Point denied.

(Doc. 23, Ex. 10 at 6-7).

The state court determinations were reasonable and in compliance with federal law. Petitioner has not rebutted the strong presumption that his counsel rendered constitutionally effective assistance, *Strickland*, 466 U.S. at 690, and he has not demonstrated actual prejudice. The claim is meritless.

## C.      Ground 3

In Ground 3, petitioner argues that the State failed to prove each element of statutory sodomy in the first degree. Petitioner raised this claim in his state habeas petitions, which were summarily denied at both the trial and appellate levels. (Doc. 1 at 167-68). A state court's summary denial with no explanation still requires a habeas petitioner to show that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Claims of insufficiency of the evidence are analyzed under the standard of *Jackson v. Virginia,* 443 U.S. 307 (1979). Under *Jackson*, a petitioner is entitled to habeas relief if, considering the evidence adduced at trial, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. Any inference is to be resolved in the prosecution's favor, and the state court's findings of fact are presumed correct, unless rebutted by clear and convincing evidence. *Nance v. Norris,* 392 F.3d 284, 290 (8th Cir. 2004); *Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004).

In this case, there was a reasonable basis for the state court to deny relief, as the prosecution offered evidence of guilt beyond a reasonable doubt. Under Missouri law, "A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." Mo. Rev. Stat. § 566.062(1). "Deviate sexual intercourse" is defined as:

any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however, slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim.

Mo. Rev. Stat. § 566.010(1).

Petitioner claims that the victim testified petitioner got "pretty close" but never actually touched her vagina. (Doc. 1 at 7). However, upon the Court's review of the record, the victim's testimony about petitioner being "pretty close" was in reference to petitioner's kissing of the victim. (Doc. 23, Ex. 1 at 279). As the victim discussed the encounter step by step, she testified that petitioner kissed the top of her thigh, "pretty close" to her vagina. (*Id.*). Then, the victim testified that petitioner touched his hand to her genitals and that his finger was inside the lips of the vagina. (Doc. 23, Ex. 1 at 281-84). Accordingly, there was sufficient evidence for the jury to find "penetration, however slight" and to convict petitioner of first-degree statutory sodomy. Petitioner has not met the *Jackson* standard, as a rational trier of fact *could* have found proof, based on the referenced evidence, of petitioner's guilt beyond a reasonable doubt. There is not a reasonable probability that the claimed error affected the outcome of the trial. Accordingly, Ground 3 is without merit.

**D.     Ground 4**

In Ground 4, petitioner argues the prosecutor misled the jury to believe incorrect elements of sexual deviant intercourse. Specifically, petitioner argues that the prosecutor misled the jury in opening arguments to believe that the crime of statutory sodomy is touching or kissing the victim's genitals. (Doc. 1 at 8). A habeas court's review of prosecutorial misconduct claims is limited to "determining whether the prosecutor's actions were so egregious that it fatally infected the entire trial, rendering it fundamentally unfair and denying [petitioner] due process." *Wycoff v. Nix*, 869 F.2d

1111, 1113 (8th Cir. 1989). This review is further constricted by the statutory deference accorded to state court findings of fact. 28 U.S.C. § 2254(d).

The transcript of the prosecutor's opening statement reveals the prosecutor simply describing the two separate counts of statutory sodomy with which petitioner was charged:

> I'm going to ask you to find [petitioner] guilty of statutory sodomy in the first degree for placing his mouth on her genitals and for trying to rape her, getting on top of her while her pants were off and his penis touching her; statutory sodomy in the first degree for putting his fingers inside of her vagina; and also because he had been left in charge of her by her mother for what's called endangering the welfare of a child[.]

Nothing in this statement would mislead the jury as to the elements of statutory sodomy. If there was any doubt, the trial court specifically instructed the jury that:

> the term deviate sexual intercourse means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

(Doc. 23, Ex. 2 at 29; Jury Instruction No. 5). Furthermore, petitioner has not shown any prejudice from the prosecutor's alleged misstatement, as the jury acquitted petitioner of the count of statutory sodomy related to his mouth, and only convicted him of statutory sodomy related to his finger. (Doc. 23, Ex. 2 at 10, 30). The prosecutor's actions did not fatally infect the entire trial nor deny petitioner due process. There is not a reasonable probability that the verdict would have been different absent the prosecutor's statements. This Ground is without merit.


E.      **Ground 5**

In Ground 5, petitioner argues the Missouri courts denied him due process of law by holding a hearing without him present or not holding an evidentiary hearing. This Ground is not cognizable, as an error in a state post-conviction proceeding will not support a claim under Section 2254(a). *See Williams-Bey v. Trickey*, 894 F.2d 314 (8th

Cir. 1990) ("Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding. Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition.") (citations and internal quotations omitted). Accordingly, this Ground is without merit.

## F.    Ground 6

In Ground 6, petitioner argues the State failed to prove each element of first-degree statutory sodomy and attempted statutory rape and shifted the burden to the defense to prove innocence. Petitioner points to DNA evidence and testimony he alleges proves his actual innocence. However, actual innocence is not a ground for habeas relief, but is only relevant to overcoming procedural default. *See Herrera v. Collins*, 506 U.S. 390 (1993).

Nevertheless, the evidence of record shows that the State proved the elements of both statutory sodomy and attempted statutory rape. With regard to statutory sodomy, for the reasons discussed in Ground 3, there was sufficient evidence presented at trial for a reasonable jury to convict petitioner of statutory sodomy.

With regard to attempted statutory rape, Missouri law requires proof of two elements for an attempt to commit a crime: (1) the defendant "does any act which is a substantial step towards the commission of the offense," and (2) does this act "with the purpose of committing the offense." Mo. Rev. Stat. § 564.011 (2012). Under Missouri law, a person commits first-degree statutory rape if he has sexual intercourse with someone less than fourteen years old. Mo. Rev. Stat. § 566.032 (2012).

The relevant jury instruction clearly and properly defined the required elements and burdens of this count:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on June 8, 2011, in the City of St. Louis, State of Missouri, the defendant took his pants down and placed his penis near the genitals of [the victim] who was then less than fourteen years of age, and

> Second, that such conduct was a substantial step toward the commission of the offense of Statutory Rape in the First Degree, and

> Third, that defendant engaged in such conduct for the purpose of committing such Statutory Rape in the First Degree.

then you will find the defendant guilty under Count II of an attempt to commit Statutory Rape in the First Degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the crime of Statutory Rape in the First Degree when he has sexual intercourse with another person who is less than fourteen years old.

As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of Statutory Rape in the First Degree.

As used in this instruction, the term "sexual intercourse" means any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results.

(Doc. 23, Ex. 2 at 31).

There was sufficient evidence in the record to support a conviction of attempted statutory rape. The victim testified that throughout the encounter, petitioner stated he had "been waiting for this for a long time." (Doc. 23, Ex. 1 at 281). The victim testified that after petitioner had digitally penetrated her vagina, he "pulled down his boxers to right

- 20 -

about above his knee and he started to get on top of [her], but [she] pushed him off." (Doc. 23, Ex. 1 at 284). The victim testified that as petitioner tried to lie on top of her, his penis touched her right thigh right above her knee, and his penis would have been right below her vagina if she had not pushed him off. (Doc. 23, Ex. 1 at 284-85). The victim testified that she "figured that [petitioner] wanted to have sex with [her]," so she pushed him off when he started getting on top of her." (Doc. 23, Ex. 1 at 286). The victim testified she pushed him off a second time, and then his phone started ringing multiple times, so he left the room to answer it. (*Id.*).

Petitioner also claims that the lack of DNA evidence renders the conviction unsupportable. Petitioner's saliva was found on the victim's neck, and nowhere else. (Doc. 23, Ex. 1 at 407-10). However, this was an issue extensively examined and cross-examined at trial, and the jury could reasonably find these DNA results were consistent with the victim's testimony that petitioner kissed and licked her on her neck and thigh.

Petitioner put on evidence in defense to discredit the victim's testimony, but the jury was free to credit the victim's testimony in considering all of the evidence and making a credibility determination. The victim's trial testimony was substantial evidence upon which the jury could constitutionally convict petitioner of first-degree attempted statutory rape. There is not a reasonable probability that the claimed error affected the outcome of the trial. Ground 6 is without merit.

## G.    Ground 7

In Ground 7, petitioner argues that his trial counsel rendered constitutionally ineffective assistance for failing to provide expert witnesses regarding or to investigate childhood sexual trauma, DNA analysis, proper police procedure, and collection of technological evidence. As discussed with respect to Ground 2, under *Strickland*, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness and actual prejudice resulting from this deficient performance.

*Strickland,* 466 U.S. at 687-88. There is a strong presumption that counsel has rendered constitutionally effective assistance. *Id.* at 690.

Petitioner alleges no facts available to counsel at the time of trial that would have reasonably prompted a decision to call experts in the suggested areas. Furthermore, petitioner does not explain what information an expert could have provided that was essential to the fairness of the trial, or how this expert testimony would have changed the outcome of the case. Defense counsel's decision to not call the four experts petitioner discusses was reasonable. Defense counsel extensively cross-examined the police officers, the child forensics interviewer, the nurse who performed the sexual assault collection kit, and the analysts from the police department lab. (Doc. 23, Ex. 1, at 242-47, 342-54, 356-59, 376-83, 388-94, 410-11, 451-54, 470-73, 549-50). There is no indication that an expert would have been more effective than defense counsel's cross-examination of these state witnesses, and petitioner has not overcome the strong presumption that counsel rendered constitutionally effective assistance. There is not a reasonable probability that the error complained of affected the outcome of the trial. Ground 7 is without merit.

**H.     Ground 8**

In Ground 8, petitioner argues the trial court abused its discretion by allowing the prosecution to strike for cause any venire member who would question the Court's instructions and the validity of the law as applied in the case, including the Missouri rules of evidence.

Jury nullification can refer to a number of different theories, but is best defined as lying under oath on its verdict form. *See Bushell's Case*, Vaughan 135, 124 E.R. 1006 (1669) (reasoning that a jury cannot "find against the direction of the court in matter of law," but only in matters of fact, and a jury's failure to follow the court's instruction in matters of law delegitimizes the jury system). A jury may have one or more motives for nullification:

> A jury's knowing and deliberate rejection of the evidence or refusal to apply the law [is generally] either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.

*Jury Nullification*, Black's Law Dictionary (10th ed. 2014).

Jurors are finders of fact, and "it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them." *Sparf v. United States*, 156 U.S. 51, 102 (1895). Courts have consistently recognized that neither jurors nor defendants have a "right" to jury nullification, and it is well within a court's authority to prevent jury nullification by dismissing, for cause, any juror who is unable or unwilling to follow the applicable law. *See, e.g., United States v. Thomas,* 116 F.3d 606, 617 (2d Cir. 1997); *United States v. Horsman*, 114 F.3d 822, 829 (8th Cir. 1997); *United States v. Geffrard*, 87 F.3d 448, 450-52 (11th Cir.), *cert. denied*, 519 U.S. 985 (1996).

Accordingly, Ground 8 is without merit.

## I.    Ground 9

In Ground 9, petitioner alleges the following: "Prosecutorial misconduct, jury stacking, Jencks/Brady material withholding, Giglio/Brady perjury, misrepresenting the forensic evidence of DNA, Amylase, and seminal fluid lab results." Petitioner repeats his sufficiency of the evidence arguments and his claim that the prosecutor misled the jury about the definition of deviant sexual intercourse. For the reasons discussed above, these grounds are without merit. Petitioner also argues that the prosecutor and police suppressed evidence that the victim and her sister have a history of making false allegations against adults. (Doc. 1 at 21). However, the evidence about the sisters' false allegations was known to defense counsel and discussed with the court at trial, and petitioner has not offered any new evidence allegedly suppressed by the prosecutor and police. (*See, e.g.,* Doc. 23, Ex. 1 at 246-47, 597). Petitioner has not shown a reasonable

probability that the verdict likely would have been different absent these now-challenged defects.

Petitioner has not stated a legal basis for habeas relief on any of these matters. Ground 9 is without merit.

**J.      Ground 10**

In Ground 10, petitioner alleges judicial bias, because the trial judge made "snide remarks" to defense counsel concerning the central defense that the allegations were a fabrication, and also wrote a book exposing "his personal worldview of the altright."

In his motion for new trial, petitioner alleged that the trial court stated "we'll see what the jury says," in a sarcastic tone of voice.  (Doc. 23, Ex. 2 at 48).  The only similar remark this Court could find in the record consistent with petitioner's allegation was the following exchange during closing arguments:

> State:      . . . You want to say that the defendant is credible, that he comes up and lies about silly stuff like whether or not he has a job or not?  "I did not have a job then, I did not have a job.  I was on probation --"
>
> Defense:  Objection.  He was mistaken.  He wasn't lying.
>
> Court:      Well, we'll let the jury decide that, Mr. Chigurupati.  Overruled.
>
> Defense:  He misunderstood the question.
>
> State:      Oh.
>
> Court:      That remark is stricken.  The jury will disregard it.
>
> State:      No, he tells you under oath he did not have a job, and he was on probation for criminal child support but he didn't have a job . . .

(Doc. 23, Ex. 1 at 583-84).

The Due Process Clause requires "a fair trial in a fair tribunal," which includes "an absence of actual bias in the trial of cases."  *In re Murchison*, 349 U.S. 133, 136 (1955).

Application of this standard, when viewed through the "deferential lens" of § 2254(d), "necessarily leaves state courts considerable latitude" when addressing claims of judicial bias. *Jones v. Luebbers*, 359 F.3d 1005, 1012 (8th Cir. 2004). "This is especially true when the allegations of bias do not relate to pecuniary interests or procedural infirmities, but rather, relate to alleged personal animosity and instances of stern courtroom administration." *Id.* at 1013. Even a showing that a judge was "thoroughly steeped in corruption" does not "support a per se finding that every case over which he presided was infected." *Bracy v. Schomig*, 286 F.3d 406, 409-10 (7th Cir. 2002). Instead, a defendant "pressing a judicial bias claim must demonstrate that the judge was 'actually biased in petitioner's own case.'" *Id.* at 410. Absent a showing of "pervasive personal bias and prejudice," a judge's unfavorable rulings on various issues do not support a claim of judicial bias. *Holloway v. United States*, 960 F.2d 1348, 1351 (8th Cir. 1992).

Petitioner has not shown judicial bias, and there is not a reasonable probability that the outcome of the trial would have been different absent the trial judge's allegedly prejudicial remark. Ground 10 is meritless.


## VI. CONCLUSION

For the reasons set forth above, the petition of Duron Cockrell for a writ of habeas corpus is denied. Petitioner has made no substantial showing that he was deprived of a constitutional right. Therefore, a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.


$\underline{\hspace{2cm} /S/ \hspace{0.3cm} \text{David D. Noce} \hspace{2cm}}$
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 9, 2019.